**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DENNIS RIORDAN, ) | |
| ) | Civil Action No. 08-1122 |
| Plaintiff, ) | Judge Nora Barry Fischer |
| ) | |
| vs. ) | |
| ) | |
| H.J. HEINZ COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.     Introduction**

This action involves *pro se* Plaintiff Dennis Riordan's ("Plaintiff") claims against H.J. Heinz Company ("Defendant" or "Heinz") related to Defendant's sale of its condiments in an upside-down bottle. Plaintiff alleges that Defendant's sales infringed upon his intellectual property rights and constituted unlawful misappropriation. (Docket No. 25). Presently before this Court is Defendant's Motion to Dismiss (Docket No. 26) Plaintiff's Amended Complaint (Docket No. 25) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed herein, Defendant's motion is GRANTED.

**II.    Factual Background**[1]

---
[1] The following facts are gleaned from the record, are accepted as true for purposes of analyzing the instant motion, and taken in the light most favorable to Plaintiff, the non-moving party. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)(citing *Pryor v. NCAA*, 288 F.3d 548, 559 (3d Cir. 2002)); *see also Leatherman v. Tarrant County Narcotics Intelligence*

### A.    Plaintiff's Initial Contact with Defendant

Plaintiff alleges that he initiated contact with Defendant on January 28, 1999 by sending a letter to Dan Vogus of Defendant's legal department, informing him that he recently applied for a patent on a container that would be "highly advantageous" to Defendant's business. (Docket No. 25 at ¶ 7). Specifically, the letter stated that the device is a "unique innovation that allows you to provide the consumer with two (2) products occupying the same vertical space (Space Saver), e.g., mustard and catsup." (Docket No. 27-2). On February 1, 1999, Defendant responded that it does not, as a matter of policy, accept any unsolicited submission of ideas from outside the company absent a written understanding defining the conditions relating to such unsolicited submissions. (Docket No. 25 at ¶ 8). Defendant informed Plaintiff that he must execute and return the "Request for Consideration of Idea" form attached to the response letter from Defendant to consider Plaintiff's proposed device. (Docket No. 25 at ¶ 8).

Plaintiff signed, executed and mailed the "Request for Consideration of Idea" form on April 20, 1999 along with a minimal description of his idea and the drawings of his bottling concept. (*Id.*). Plaintiff alleges that through all of his correspondence with Defendant, including the submission of this form and its attachments, Plaintiff provided "confidential knowledge" to Heinz and introduced the concept of an "upside-down" bottle to Defendant. (Docket No. 25 at ¶¶ 3, 7-8). Heinz responded to Plaintiff in June of 1999, thanking him for his letter regarding a potential new bottle, but ultimately rejecting his idea after reviewing the concept with the appropriate department. (*Id.* at ¶ 10).

---

*& Coordination Unit*, 507 U.S. 163, 164 (1993).

### B.     Plaintiff's Idea

At various times throughout the Amended Complaint, Plaintiff describes his alleged intellectual property interest as either a "concept/idea" (*see* Docket No. 25 (*passim*)), "innovative concept/ideas towards a futuristic innovative invention" (*Id.* at ¶ 3), a "Bottling concept" (*Id.* at ¶ 3), "Bottle art-work" (*Id.* at ¶ 6), "innovative terminology" (*Id.* at ¶ 9), and "verbal property." (*Id.* at ¶ 22). Plaintiff does mention that the United States Patent and Trademark Office issued him the patent number 6,105,812 ("the '812 Patent") for a device described as a "dual chamber container." (*Id.* at ¶ 11). Plaintiff further avers that in a document captioned "The 2 Liter Flavor Saver," he "expressly referenced the bottling concept: [s]ymmetrical base allows identical 2 way [sic] spout. Ultimately, this innovative shape is neither up-side down nor right-side up. Promotionally, 2 chances to win." (*Id.* at ¶ 20).

### C.     Defendant's Introduction of its "Upside-Down" Bottle to the Consumer Market.

On August 28, 2002, Defendant issued a press release announcing the introduction of its "No Wait, No Mess (TM), upside-down ketchup bottle." (Docket No. 25 at ¶ 12). In January of 2006, Plaintiff contacted Defendant's legal department to request copies of their previous correspondence. (Docket No. 25 at ¶ 15). Plaintiff alleges that Defendant informed him that he had been "red-flagged" in their system and an attorney for Defendant asked Plaintiff if he was going to sue for any reason. (*Id.*).

The crux of Plaintiff's claim is that Defendant, without seeking Plaintiff's permission, misappropriated the ideas Plaintiff allegedly introduced in his earlier correspondence with Defendant to develop an "upside-down" bottle. (*See* Docket No. 25 at ¶¶ 17-18, 21).

### III.    Procedural History

Plaintiff initially commenced this action by filing his Complaint *pro se* in the United States District Court for the Southern District of New York. (Docket No. 4). Thereafter, on August 11, 2008, that Court entered an order transferring the case to the United States District Court for the Western District of Pennsylvania. (*Id.*). On August 22, 2008, Plaintiff moved for Leave to Proceed *in forma pauperis* (Docket No. 5), which this Court denied. (Docket No. 6). After paying the proper filing fee on August 25, 2008, Plaintiff filed his Complaint with this Court. (Docket No. 8).

On October 20, 2008, Defendant filed a Motion to Dismiss Pursuant to Rules 12(b)(6), 12(e), and, in the alternative, Rule 12(d) and 56. (Docket No. 11). Plaintiff filed his response on December 23, 2008. (Docket No. 18). Then, on December 30, 2008, upon consideration of the parties' submissions, this Court ordered Plaintiff to file an Amended Complaint. (Docket No. 22).

On February 17, 2009, Plaintiff filed his Amended Complaint. (Docket No. 25). In turn, Defendant filed the instant Motion to Dismiss on March 5, 2009. (Docket No. 26). On April 20, 2009, after being granted an extension, Plaintiff filed his Response to Defendant's Motion to Dismiss and Brief in Support of same. (Docket Nos. 30 and 31). Defendant filed its Reply Brief on May 4, 2009 (Docket No. 32). Plaintiff filed his Sur-Reply in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint on May 26, 2009. (Docket No. 33). As briefing has concluded, Defendant's motion is now ripe for disposition.

**IV.     Legal Standard**

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(quoting *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544 (2008)).

The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 129 S.Ct. at 1953. The court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555). The determination of whether a complaint contains a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

Additionally, because Plaintiff is proceeding *pro se*, his allegations are to be liberally construed as he is held to a less stringent standard than attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Washam v. Stesis*, Civ. A. No. 08-3869, 2009 U.S. App. LEXIS 7768, at *3 (3d Cir. Apr. 10, 2009).

When a motion to dismiss is granted, the grant or denial of opportunity to amend is within the discretion of the district court. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Futility is a ground that could justify a denial of leave to amend. *Id.* "Futility" means that the complaint, as amended, "would fail to state a claim upon which relief could be granted." *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

1434 (3d Cir. 1997)). In assessing "futility" the district court applies the same standard of legal sufficiency as set forth under Rule 12(b)(6). *See* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 15.15[3], at 15-47 to 15-48 (3d ed. 2000). Accordingly, "if a claim is vulnerable to dismissal under Rule 12(b)(6) but the plaintiff moves to amend, leave to amend must generally be granted unless the amendment would not cure the deficiency." *Shane*, 213 F.3d at 115. The Court now turns to its analysis of Plaintiff's Amended Complaint.

## V. Discussion

In his Amended Complaint, Plaintiff brings claims of "Misappropriation of Intellect[ual] Property (Count I)," "Theft of Terminology as a nexus to bottling concept/idea, and or futuristic artwork (Count II)," and "Intrusion on Copyright Privileges as a State Violation (Count III)." (Docket No. 25 at ¶¶ 16-26). Liberally construing Plaintiff's Amended Complaint, Defendant reads it as potentially asserting claims of misappropriation of ideas, misappropriation of trade secrets, trademark infringement and federal copyright infringement. (Docket No. 27 at 7-15). Defendant also recognizes that Plaintiff has voluntarily withdrawn any claim of patent infringement. (*Id.* at 7). This Court agrees with Defendant's analysis and will now address Defendant's arguments as to each of these claims, in turn, once it resolves the question of choice of law as to Plaintiff's state law claims.

### A. Choice of Law

Plaintiff is a citizen of New York who corresponded with Defendant, a Pennsylvania corporation which has its principal place of business in Pittsburgh, Pennsylvania. In determining the law applicable to Plaintiff's state law claims, this Court applies Pennsylvania's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 64, 78 (1941). Pennsylvania has combined

a "governmental interest analysis" with the Restatement (Second) of Conflicts theory, thereby adopting a "hybrid" approach. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007)(citing *Melville v. American Home Assur. Co.*, 584 F.2d 1306 (3d Cir. 1978) and *Griffith v. United Airlines, Inc.*, 416 Pa.1, 203 A.2d 796 (Pa. 1964)).

This approach requires the Court to first determine whether there is a relevant difference between the law of the states whose laws potentially apply, *i.e.*, whether there is a conflict. *Hammersmith*, 480 F.3d at 230. If their respective laws are the same, there is no conflict at all and the choice of law analysis ends; Pennsylvania law would apply. *Id.* If the laws differ, the Court must examine the policies underlying the law of each jurisdiction and determine whether the conflict is "true," "false," or "unprovided for." *Id.*

"A true conflict exists when the governmental interests of [multiple] jurisdictions would be impaired if their law were not applied." *Budget Rent-A-Car Sys. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005)(quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 & n.15 (3d Cir. 1991)). If a true conflict exists, the Court must then determine which state has the "greater interest in the application of its law." *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854, 856 (1970).

A false conflict exists only if one jurisdiction's governmental interests would be impaired by the application of another jurisdiction's law. *Budget Rent-A-Car*, 407 F.3d at 170. When there is a false conflict, the court must apply the law of the only interested jurisdiction. *Id.* If no jurisdiction's interests would be impaired if its laws were not applied, there is an "unprovided for" conflict and *lex loci delicti* (the law of the place of the wrong) continues to govern. *Budget Rent-A-Car Sys. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005)(citing *Miller v. Gay*, 323 Pa. Super. 466, 470 A.2d 1353 (1983)).

### 1. *Choice of Law: Misappropriation of Ideas*

As this case involves state law claims of misappropriation of ideas and misappropriation of trade secrets, the Court must compare Pennsylvania and New York law for each. Upon examination of Pennsylvania and New York law for misappropriation of ideas, the primary difference is that New York law requires a legal relationship between the plaintiff and defendant while Pennsylvania law does not. *See Blackmon v. Iverson*, 324 F.Supp.2d 602, 607 (E.D. Pa. 2003)(citing *Sorbee Int'l Ltd. v. Chubb Custom Ins. Co.*, 735 A.2d 712 (Pa. 1999)) (elements of idea misappropriation are novelty and misappropriation); *Hogan v. DC Comics*, 48 F.Supp.2d 298, 314 (S.D.N.Y. 1999) (elements of idea misappropriation are novelty, misappropriation, and legal relationship). Because there is a relevant difference between New York and Pennsylvania idea misappropriation laws, the Court must determine whether there is an "actual" conflict, *i.e.* classify the conflict as "true," "false" or "unprovided-for." *Hammersmith*, 480 F.3d at 230-31.

To classify the conflict, the Court looks to the policies underlying the laws of each state and determines whether each state has a governmental interest in applying its own laws. *Budget Rent-A-Car*, 407 F.3d at 170; *Lejeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996). Here, New York idea misappropriation law requires a legal relationship between plaintiff and defendant, thereby protecting defendants. *See Hogan*, 48 F.Supp.2d at 314. Pennsylvania idea misappropriation law lacks the legal relationship requirement, thereby allowing any plaintiff who may have a claim to bring a suit. *Blackmon*, 324 F.Supp.2d 607. The present action involves a plaintiff from New York, a jurisdiction with a law protecting defendants, and a defendant from Pennsylvania, a jurisdiction with a law protecting plaintiffs. Because no New York defendant is involved, applying Pennsylvania law will not impair New York's interest in protecting defendants.

As Plaintiff is from New York, applying New York law will not impair Pennsylvania's interest in protecting its plaintiffs. Therefore, the conflict is "unprovided-for" because neither state's interest would be impaired if its law is not applied. *Hammersmith*, 480 F.3d at 230-31. Since Plaintiff submitted his idea to Defendant's headquarters in Pennsylvania, where Defendant allegedly reviewed same (Docket No. 25 at ¶ 10), the claimed misappropriation, if any, would have taken place in Pennsylvania. Accordingly, the Court will apply Pennsylvania law. *See Budget Rent-A-Car*, 407 F.3d at 170.

2.      *Choice of Law: Misappropriation of Trade Secrets*

New York and Pennsylvania misappropriation of trade secrets laws are very similar. *Compare FedEx Ground Package Sys., Inc. v. Application Int'l Group*, 2008 WL 4279751, at * 11 (W.D. Pa. Sept. 12, 2008)(citing *Moore v. Kulicke & Soffa Indus., Inc.* 318 F.3d 561, 566 (3d Cir. 2003))(elements of misappropriation of trade secrets are existence and possession of a trade secret, communication of trade secret pursuant to confidential relationship, use of trade secret in violation of that confidence, and harm to plaintiff) *with North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 28, 43-44 (2d Cir. 1999)(elements of misappropriation of trade secrets are possession and existence of a trade secret and use of that trade secret in violation of a confidential relationship). The Court, therefore, finds no relevant differences between the two states' laws and will apply Pennsylvania law. *See Hammersmith*, 480 F.3d at 230.

**B.     Misappropriation of Ideas**

In Count One of his Amended Complaint, Plaintiff alleges that Defendant misappropriated his intellectual property. (Docket No. 25 at ¶¶ 16-18). While "misappropriation of intellectual property" is not a specific cause of action, the Court finds that it is most analogous to the tort of

misappropriation of ideas as it exists under Pennsylvania law. Specifically, Plaintiff claims that upon review of his "concept/ideas, and/or 'art-work,'" Defendant misappropriated same. (*Id.* at ¶¶ 14, 16). Defendant contends that Plaintiff's misappropriation claim fails because Plaintiff has not alleged an idea that is novel or concrete or that he has suffered any loss of competitive advantage or other business loss. (Docket No. 27 at 7-10).

### 1. *Plaintiff's Claim of Misappropriation of Ideas*

Under Pennsylvania law, the tort of misappropriation of ideas has two elements: (1) the plaintiff had an idea that was novel and concrete, and (2) his idea was misappropriated by the defendant. *Blackmon*, 324 F.Supp.2d at 602. To determine whether an idea has been misappropriated, a Pennsylvania court looks to the three elements of common law misappropriation:

> (1) the plaintiff "has made substantial investment of time, effort, and money into creating the thing misappropriated such that the court can characterize the 'thing' as a kind of property right," (2) the defendant "has appropriated the 'thing' at little or no cost such that the court can characterize the defendant's actions as 'reaping where it has not sewn,'" and (3) the defendant "has injured the plaintiff by the misappropriation."

*Sorbee*, 735 A.2d at 716 (quoting *LeBas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group*, 50 Cal. App. 4th 548 (Ca. App. 1996)). A plaintiff may also be required to establish that there is competition between the plaintiff and the defendant.[2] *Sorbee*, 735 A.2d at 716 (quoting *Atlantic Mutual Ins. Co. v. Badger Medical Supply Co.*, 528 N.W. 2d 486 (Wis. 1999)(""[The] essence of [a] cause of action of misappropriation is the defendant's use of the plaintiff's product, into which

---

[2] There appears to be a legal issue as to whether a claim for misappropriation of ideas under Pennsylvania law requires competition between the plaintiff and defendant. *See Blackmon*, 324 F.Supp.2d at 607. As Plaintiff's claims are deficient for other reasons, the Court will not presently address this issue.

plaintiff has put time, skill and money; and the defendant's use of the plaintiff's product or a copy of it in competition with the plaintiff and gaining an advantage in that competition because the plaintiff, and not the defendant, has expended the energy to produce it.")).

For an idea to be legally protected, the idea must meet the threshold requirement of novelty. *Blackmon*, 324 F.Supp.2d at 607. An idea is novel and merits protection when it is truly innovative, inventive, and new. *Id.* An idea is not novel if it is merely a clever version or variation of already existing ideas. *Id.* Novelty and concreteness are required so that the court can identify an idea as having been created by one party and stolen by another. *Sorbee*, 735 A.2d. at 714. As an example, in *Blackmon*, the idea involved was the slogan "The Answer," intended as an advertising brand for professional basketball player Allen Iverson. *Id.* at 607. Also, the idea in *M.H. Segan* was "Frankenstuff," a child's doll designed to look like a juvenile Frankenstein monster. *M.H. Segan*, 924 F.Supp. at 524.

In his Amended Complaint, Plaintiff uses only vague terms to describe the idea or intellectual property he submitted to Defendant. Plaintiff describes his alleged intellectual property interest as either a "concept/idea" (*see* Docket No. 25 (*passim*)), "innovative concept/ideas towards a futuristic innovative invention" (*Id.* at ¶ 3), a "Bottling concept" (*Id.* at ¶ 3), "Bottle art-work" (*Id.* at ¶ 6), "innovative terminology" (*Id.* at ¶ 9), and "verbal property." (*Id.* at ¶ 22). Plaintiff does mention that the United States Patent and Trademark Office issued him the patent number 6,105,812 for a device described as a "dual chamber container." (*Id.* at ¶ 11). Plaintiff further avers that in a document captioned "The 2 Liter Flavor Saver," he "expressly referenced the bottling concept: [s]ymmetrical base allows identical 2 way [sic] spout. Ultimately, this innovative shape is neither up-side down nor right-side up." (*Id.* at ¶ 20). Defendant also recognizes the same, arguing that

11

"[t]he Amended Complaint is. . .unclear as to the precise nature of Plaintiff's intellectual property." (Docket No. 27 at 5). Given only these vague characterizations, the Court cannot evaluate Plaintiff's claim for misappropriation of ideas because the Court cannot ascertain the exact idea Plaintiff presented to Defendant even under the most liberal reading of his Amended Complaint.

This Court's confusion is exacerbated by Plaintiff's response to Defendant's motion to dismiss. In his brief styled "Reply," Plaintiff appears to clarify his idea through reference to the documents he submitted to Defendant, the accompanying "art work," and his patent. (Docket No. 30 at ¶¶ 5-6, 11, 13). However, Plaintiff's Amended Complaint, the operative document for his claims, does not sufficiently describe his idea nor does he allege what documents he submitted to Defendant. Given the vague allegations relating to Plaintiff's idea, Plaintiff has not sufficiently alleged that he submitted to Defendant an idea that is novel or concrete, and the Court cannot determine whether Defendant misappropriated said idea. Therefore, Plaintiff has not alleged "enough factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949(quoting *Twombly*, 550 U.S. at 570). Accordingly, Defendant's motion to dismiss Plaintiff's claim for misappropriation of ideas is granted, and said claim as pled in the Amended Complaint is dismissed, without prejudice, given his *pro se* status.

      2.  *Statute of Limitations*

Defendant alternatively argues that even if Plaintiff successfully alleged a claim for misappropriation of ideas, the statute of limitations bars his claim. (Docket No. 27 at 11-13). Having found that Plaintiff has not sufficiently pled a novel and concrete idea that he submitted to Defendant and being currently unable to determine whether said idea was misappropriated by Defendant, this Court finds that it is premature to determine whether the statute of limitations applies

to bar Plaintiff's claim.

The Court is also mindful that Plaintiff is *pro se* and that a motion to dismiss may be granted on statute of limitations grounds only if the bar is apparent on the face of the complaint. *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)("If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."). Accordingly, liberally construing the allegations in the Amended Complaint, dismissal is not warranted on this basis.

### 3. Conclusion as to Plaintiff's Claim of Misappropriation of Ideas

Recognizing that the Plaintiff is *pro se* and considering that the allegations in his Amended Complaint are to be construed liberally, the Court finds that amendment may cure the deficiencies noted in his Amended Complaint and that he may be able to state a claim under this theory. *See Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2003)(*pro se* complaints should be construed liberally and leave to amend should be granted absent bad faith, prejudice, undue delay, or futility); *Shane*, 213 F.3d at 115. Therefore, Plaintiff is granted leave to amend his Complaint as to the misappropriation of ideas count a second time. Plaintiff is advised to describe his idea succinctly and in plain English.

### C.  **Misappropriation of Trade Secrets**

In addition to the claim of misappropriation of ideas, the Court also construes Plaintiff's Amended Complaint as potentially alleging a claim of misappropriation of trade secrets. The elements of a misappropriation of trade secrets claim in Pennsylvania are (1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret in violation of that confidence; and (4) harm to the plaintiff. *See FedEx Ground*

*Package Sys., Inc. v. Application Int'l Group*, 2008 WL 4279751, at * 11 (W.D. Pa. Sept. 12, 2008). Plaintiff has not alleged that he actually possesses a trade secret or that any trade secret exists. (Docket No. 25). He fails to allege the existence of any information or device that he used in business for competitive advantage. (*Id.*). He also fails to allege that the subject matter embodying any alleged trade secret is not generally known. (*Id.*).

To the extent that Plaintiff claims as a trade secret the subject matter of the published '812 Patent, such subject matter is no longer entitled to trade secret protection. *Injection Research Specialists, Inc. v. Polaris Indus., L.P.*, Civ. A. Nos. 97-1516, 97-1545, 97-1557, 168 F.3d 1320, 1998 WL 536585 (Fed.Cir. Aug. 13, 1998)(citing *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489U.S. 141, 149 (1988)). "Once an inventor has decided to lift the veil of secrecy from his work, he must choose the protection of a federal patent or the dedication of his idea to the public at large." *Bonito Boats*, 498 U.S. at 149.

Plaintiff also fails to allege facts that would support a claim that he made an effort to protect any alleged trade secret. Plaintiff acknowledges in his Amended complaint that he (1) sent an unsolicited letter to Defendant on January 28, 1999 (Docket No. 25 at ¶ 7); (2) received Defendant's February 1, 1999 response (*Id.* at ¶ 8); and (3) sent the Request for Consideration of Idea form and supporting documentation to Defendant on April 20, 1999 (*Id.* at ¶¶ 8-9). These allegations clearly evince conduct contrary to a confidential relationship. Finally, Plaintiff has not alleged that any confidential relationship was created. (*Id.*).

For the above reasons, Plaintiff has failed to state a claim for misappropriation of trade secrets. Accordingly, to the extent that Plaintiff's Amended Complaint can be construed as alleging a misappropriation of trade secrets claim, Defendant's motion to dismiss same is granted.

Because Plaintiff has lifted the veil of secrecy from his ideas by disclosing them to Defendant, amendment of his complaint as to any misappropriation of trade secrets claim is futile because amendment would not cure this deficiency. *Shane*, 213 F.3d at 115. Therefore, to the extent that Plaintiff's amended complaint can be construed as alleging a misappropriation of trade secrets claim,[3] said claim is dismissed, with prejudice.

### D. Trademark Infringement

In Count Two of his Amended Complaint, Plaintiff alleges a claim of "Theft of Terminology as a nexus to bottling concept/idea, and or [sic] futuristic art-work." (Docket No. 25 at ¶¶ 19-22). "Theft of Terminology" is not an actual cause of action under Pennsylvania or New York law. Applying a liberal reading to the Amended Complaint, as this Court must, the Court construes this claim as trademark infringement of the phrase "upside-down."

Trademark infringement is defined and governed by the Lanham Act. *See* 15 U.S.C. § 1114(1). "The Lanham Act defines trademark infringement as use of a mark so similar to that of a prior user as to be 'likely to cause confusion, or to cause mistake, or to deceive.'" *Kos Pharmaceuticals, Inc. v. Andrix Corp.*, 369 F.3d 700, 711 (3d Cir. 2004). The mark must be owned by Plaintiff and valid to be legally protectable. *A & H Sportswear, Inc. v. Victoria's Secret*, 237 F.3d 198, 210-11 (3d Cir. 2000). If a plaintiff does not own a registered trademark, he must show that "he was the first to adopt the mark in commerce, he has continuously used the mark in commerce since its adoption, and his mark is inherently distinctive or has acquired secondary

---

[3] Plaintiff has also apparently admitted that he "cannot prevail on a trade secrets claim because he "is not a company, nor a corporation to presume a competition between himself and defendant, ('Heinz') [sic].").

meaning." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991).[4] The overall purpose of the act is to provide protection for the trademarks as well as the public, which runs the risk of being confused or misled as the result of trademark infringement. *U.S. Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981). The Act does not require that there be actual confusion; instead, it requires only a likelihood of confusion. *Family Circle, Inc. v Family Circle Assocs., Inc.*, 332 F.2d 534, 539-40 (3d Cir. 1964).

Plaintiff admits that he "never pointedly acquired a registration trademark [sic]" for the phrase "upside-down." (*See* Docket No. 30 at ¶ 19). Therefore, Plaintiff must show that he was the first to adopt the mark in commerce, continuous use of the mark, and the mark's inherent distinctiveness. Plaintiff makes no such allegations in his Amended Complaint. (Docket No. 25). In addition, Plaintiff makes no allegations that he ever sold his device to anyone. (*Id.*). Given his lack of success in marketing his dual-chambered container to Heinz. Plaintiff cannot show that he has used the mark "upside-down" in relation to his product in commerce for any length of time. Moreover, the term "upside-down" by itself is not inherently distinctive, and Plaintiff does not allege

---

[4]

Central to a claim for trademark infringement is a showing of a mark's continuous use in commerce. *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918); *Ford Motor Co.*, 930 F.2d at 292. The United States Supreme Court has stated this principle as follows:

> There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed . . . *the right to a particular mark grows out of its use*, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing word or symbol.

*United Drug Co.*, 248 U.S. at 97.

that the term has gained any secondary meaning. Without any use in commerce or any inherent distinctiveness of the term in question, Plaintiff cannot show the likelihood of confusion necessary for a claim of trademark infringement. *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1019 (3d Cir. 2008).

Accordingly, Defendant's motion to dismiss Plaintiff's trademark infringement claim, to the extent that Plaintiff has attempted to allege a claim of trademark infringement, is granted. Further amendment of his Complaint is futile as it would not cure the deficiencies the Court has noted. *Shane*, 213 F.3d at 115. Therefore, this claim is dismissed, with prejudice.

### E. Copyright Infringement

In Count Three of his Amended Complaint, Plaintiff alleges that Defendant "infringed upon Plaintiff's copyright privileges" as a "state violation." (Docket No. 25 at ¶ 24). The Copyright Act of 1976 has preempted all state laws that are equivalent to the federal copyright law. 17 U.S.C. § 301. Accordingly, Plaintiff's state copyright claim is dismissed as stated. However, given Plaintiff is proceeding *pro se* the Court will also consider whether Plaintiff's Amended Complaint has alleged a violation of the federal Copyright Act. 17 U.S.C. § 101 *et seq.*

Defendant argues that Plaintiff has failed to state a claim for federal copyright infringement.[5] (Docket No. 27 at 8). To establish a claim of federal copyright infringement, a plaintiff must establish "(1) ownership of a valid copyright; and (2) unauthorized copies of original elements of

---

[5] In the alternative, Defendant asks the Court to convert the present motion to one under Federal Rule of Civil Procedure 56 and grant summary judgment based upon a determination that no rational trier of fact could find that the works at issue are substantially similar. (Docket No. 27 at 9 n. 6). Because the Court is dismissing this cause of action on other grounds, it need not take this route.

the Plaintiff's work." *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). Ownership of a valid copyright requires the following: "(1) originality in the author; (2) copyrightability of the subject matter; (3) a national point of attachment of the work, such as to permit a claim of copyright; (4) compliance with applicable statutory formalities; and (5) (if the owner is not the author) a transfer of rights or other relationship between the owner and the author." 13 MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHTS, §13.01[A] (2007). Registration with the Copyright Office is considered *prima facie* evidence of ownership. 17 U.S.C. § 410(c). Further, initiation of a civil suit for copyright infringement *requires* either preregistration or registration of the work in question in accordance with the United States Copyright Act prior to initiating the suit. 17 U.S.C. § 411(a).

Plaintiff has failed to state a claim for copyright infringement because his allegations do not establish that he owned a valid copyright in any subject matter. Nor does Plaintiff aver that he has registered or preregistered any copyright with the Copyright Office.

Accordingly, Defendant's motion to dismiss Plaintiff's claim of copyright infringement is granted. Plaintiff's copyright cause of action under state law is preempted, and his federal copyright claim fails because he has not alleged registration of any subject matter. To the extent that Plaintiff does not own a registered copyright in any subject matter, further amendment of his Amended Complaint would be futile as it would not cure this deficiency. *Shane*, 213 F.3d at 115. If, however, Plaintiff owns a valid, registered copyright in any of his subject matter and can allege proof of same, amendment would not be futile. *See Tegg Corp. v. Beckstrom Elec. Co.*, Civ. A. No. 08-435, 2008 WL 2682602, at * 8 (W.D. Pa. July 1, 2008). Plaintiff's claim of federal copyright infringement is, therefore, dismissed, without prejudice.

### F.      Patent Infringement

Although Plaintiff references the '812 Patent in his Amended Complaint, (*see* Docket No. 25 at ¶¶ 11, 13, 19-20, 22), Plaintiff has withdrawn any patent infringement claim. In his Amended Complaint, Plaintiff makes no allegations that Defendant infringed his patent. (Docket No. 25). In his "Affirmation in Support of Reply," Plaintiff admits to having no claim for patent infringement. (Docket No. 19 at ¶ 7; Docket No. 23 at ¶ 7). Accordingly, as Plaintiff has voluntarily withdrawn any patent claim, said claim is dismissed, with prejudice.

## VI.     Conclusion

Based on the foregoing, Defendant's Motion to Dismiss Plaintiff's Amended Complaint [26] is GRANTED. Plaintiff fails to state a claim for misappropriation of ideas under Pennsylvania law. However, Plaintiff will be granted leave to amend his complaint a second time to clarify the exact idea he allegedly submitted to Defendant. Plaintiff fails to state a claim for misappropriation of trade secrets because he fails to allege the existence of a trade secret. Therefore, Plaintiff's misappropriation of trade secrets claim is dismissed, with prejudice. Plaintiff fails to state a claim for trademark infringement because he does not own a registered trademark and has not alleged how he used his device in commerce. Therefore, Plaintiff's trademark infringement claim is dismissed, with prejudice. Plaintiff's copyright claim fails because there is no state cause of action for copyright infringement and he has not alleged that he registered or preregistered his drawings with the Copyright Office. Given Plaintiff's *pro se* status, the Court finds that amendment in this context is not futile. Accordingly, Plaintiff's copyright claim is dismissed, without prejudice. Plaintiff is granted leave to amend to the extent that he can allege he owns a registered copyright in any of the subject matter at issue. Finally, as Plaintiff has voluntarily withdrawn his patent claim, Plaintiff's

patent claim is dismissed, with prejudice. An appropriate order follows.

> *s/ Nora Barry Fischer*
> Nora Barry Fischer
> United States District Judge

Date: August 12, 2009

cc/ecf: All counsel of record
cc:     Dennis Riordan
        9 Deforest Avenue
        New York City, NY 10956
        Certified and Regular Mail