**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DENNIS RIORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1122 |
| | ) | Judge Nora Barry Fischer |
| H.J. HEINZ COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

This action involves *pro se* Plaintiff Dennis Riordan's ("Plaintiff") claims against H.J. Heinz Company ("Defendant" or "Heinz") related to Plaintiff's unsolicited submission of a proposed bottling device invention to Defendant and Defendant's later sale of its condiments in an up-side down bottle.  Presently before the Court is a third motion to dismiss filed by Defendant, pursuant to which it seeks to dismiss Plaintiff's misappropriation of ideas and copyright infringement claims set forth in his Second Amended Complaint (Docket No. 37).  In support of its motion, Defendant argues that Plaintiff's misappropriation claim is barred by a waiver agreement executed by Plaintiff and submitted to Defendant in conjunction with his proposed invention and/or the applicable statute of limitations and that Plaintiff has otherwise properly failed to state claims upon which relief may be granted for both misappropriation of ideas and copyright infringement.  (Docket Nos. 39, 42).  Plaintiff maintains that the waiver is not enforceable, the statute of limitations should be tolled and that he has properly pled his claims.  (Docket Nos. 41 and 42).  Upon consideration of the parties' submissions, and for the following reasons, Defendant's motion to dismiss is GRANTED.

## II.   FACTUAL BACKGROUND

On January 21, 1999, Plaintiff filed an application with the United States Patent and Trademark Office in order to obtain a patent for a bottling container for condiments and flavored beverages, which he named a "Dual Chamber Container." (Docket No. 37 at ¶¶ 3, 9).  Shortly thereafter, on January 28, 1999, Plaintiff initiated contact with Defendant by sending a letter to Dan Vogus, Defendant's Associate General Counsel, informing him that he recently applied for a patent for a container that would be "highly advantageous" to Defendant's business.  (Docket No. 37 at ¶ 5; Docket No. 39-2).[1]  Specifically, the letter stated that the device is a "unique innovation that

---

[1]

The letter reads as follows:

> Dear Mr. Vogus:
>
> I have recently filed a patent for a container which I strongly feel would be highly advantageous and well worth the time of investigating.
>
> This is a great opportunity for your company as you well know that packaging is of utmost importance in selling your product in today's competitive market.  Companies are currently devising advertising strategies to enhance their innate value by obtaining a competitive edge.  Think of what such a product will do for company sales, revenue and increased market value.
>
> Are you willing to let this innovative "Blockbuster Bottle for the Millennium" pass you by?  More importantly, are you willing to let your competition take advantage of this futuristic innovation?  Do not hesitate.
>
> This unique innovation allows you to provide the consumer with two (2) products occupying the same vertical space (Space Saver), e.g., mustard and catsup.  A perfect combination for any household, convenient and practical, but most of all total satisfaction for the consumer.
>
> Lead the way into the new century and blow away your competition.  This unique packaging is inevitable, be the first to utilize its

2

allows you to provide the consumer with two (2) products occupying the same vertical space (Space Saver), e.g., mustard and catsup." (Docket No. 39-2).[2]  On February 1, 1999, Defendant responded that it does not, as a matter of policy, accept any unsolicited submission of ideas from outside the company absent a written understanding defining the conditions relating to such unsolicited submissions.[3]  (Docket No. 37 at ¶ 6; Docket No. 39-4).  Defendant informed Plaintiff that he must

---

> marketing power.
>
> I can be reached at (914) ***-**** for further questions and information.
>
> s/ Dennis Riordan
> Dennis Riordan, Inventor
> Patent Pending

(Docket No. 39-2).

[2]

Plaintiff sent a similar letter and submission to Crown, Cork & Seal Co. Inc. by fax on February 8, 1999.  (Docket No. 37-2).

[3]

The February 1, 1999 letter states:

> Dear Mr. Riordan:
>
> Thank you very much for your letter, dated January 28, 1999, in which you indicate that you believe you may have ideas that may be of interest to H.J. Heinz Company ("Heinz").
>
> As a matter of policy, Heinz does not solicit the submission of ideas from outside our company.  This being the case, I am returning your letter dated January 28, 1999.  Heinz is willing to consider unsolicited ideas only if a written understanding defining the conditions relating to such unsolicited submissions exists.
>
> On the reverse side of this letter, you will find a request form setting forth such conditions.  You should execute this form and return it to me at the time you submit your idea in order for Heinz to receive or consider your idea.

3

execute and return the attached "Request for Consideration of Idea" form prior to Defendant

considering Plaintiff's proposed device.  (Docket No. 37 at ¶ 6; Docket No. 39-4).

      Plaintiff signed, executed and mailed the "Request for Consideration of Idea" form on April

20, 1999 along with a minimal description of his idea and drawings of his bottling concept. (Docket

No. 37 at ¶¶ 6-7; Docket No. 39-5).  Pursuant to the "Request for Consideration of Idea" form,

Plaintiff agreed that "[s]ubject to the conditions set forth in this document, I am submitting for

[Defendant's] consideration my idea relating to: ... Dual Chamber Bottle with Symmetrical Ends."

(Docket No. 39-5). Plaintiff's submission further explains that the device "[c]an be used as dispenser

of for ex. Mustard & Catsup or other combinations." (Docket No. 39-5).  The executed form also

sets forth the terms of the solicitation as follows:

    1.     I acknowledge and agree that this submission has not in any way been solicited by H.J.Heinz Company ("HEINZ"), is not made in confidence, and does not establish any confidential relationship between HEINZ and me.

    2.     I agree that the use or non-use that HEINZ may make of any ideas submitted by me shall be at the exclusive discretion of HEINZ.

    3.     I acknowledge and agree that HEINZ has not and is not promising any compensation for my idea or the use of my idea, and that all agreements as to compensation, if any, shall be in writing.

    4.     I waive and relinquish any rights that I may have in connection with said idea, except those rights that a valid

_____

Very truly yours,

s/ Max F. Miller

(Docket No. 39-4).

4

patent, trademark, or copyright may cover.

5.      I agree that HEINZ shall be under no obligation to return any material that [I] submit to HEINZ.

6.      I further agree that the conditions set forth in this letter shall apply to any additional disclosures I make to HEINZ by me relating to the above idea.

(*Id.*).   As a supplement to the brief description on the form, Plaintiff attached a handwritten

descriptive page[4] and a notarized typewritten page,[5] containing bullet point descriptions of his bottle

---

[4]
The handwritten descriptive page is dated 4/20/99 and states the following:

-      A Revolutionary bottle appropriate to your product line.
-      A "Space Saver" which houses Mustard and Catsup in one vertical space.
-      Perfect for picnics, sports events, college students or single people.
-      Bottle can be altered to accomodate [sic] current triangular pour spouts AND decreasing deviation from the true scope and spirit of the invention.
-      Make a tremendous impact on market AND increase company revenue.
-      Innovative packaging for the "Millenium"
      "Two for 2 Thousand"

      Thank you

      s/ Dennis Riordan
      # 914-***-****

(Docket No. 39-5).

[5]
The typewritten descriptive page is dated in November of 1998 and states the following:

*"The 2 Liter Flavor Saver": "The Flavor Saver that Savors the Flavor"*
      *"Savor the Flavor With the Flavor Saver"*
•      Unique compartimentalization will prevent 2 liter carbonated beverage from going flat (MAJOR CONSUMER COMPLAINT) 1 liter remains carbonated

invention. (*Id.*).  Also attached were a series of technical illustrations of the container labeled Figure

1 through Figure 6.[6]  (*Id.*).  Defendant responded to Plaintiff in June of 1999, thanking him for his

---

           during consumption of opposite liter.
- Conical divider displaces carbonated beverage so weight is distributed as to prevent "Top-Heaviness".
- Circumference is same as present 2 liter bottle so as not to cause interference with present crate shipping.
- Conical divider allows for mixing 2 liter carbonated beverage that offers more than one flavor, i.e.; diet/regular>>>*"2 Liter Buddy Pac"*
- Not limited to 2 liter bottle>>>Perfect for 3 liter; 1.5 + 1.5 = 3
- Symmetrical base allows identical 2-way spout. Ultimately, this innovative shape is neither up-side down nor right-side up.  Promotionally, 2 chances to win.
- Symmetrical base ensures stability when standing.
- Symmetrical base serves as spill-guard.
- Symmetrical base contains easy-carry two finger punch design.
- Symmetrical base contains rounded and/or tapered edge for safety.
- Unique symmetrical design makes any household combinations available, i.e.; juices, foods, detergents, spreads.  Serves as a *"Space Saver"*.
- Current bottles are mundane and boring.  People will buy solely because of uniqueness and futuristic design.  Similar to Coca-Cola Twist Bottle, an American Icon.
- Advertising; *"Turn of the Century"*, "turn" the bottle either way and still have the same great product.  *"Blockbuster Bottle for the Millenium"*

This Descriptive page entitled "The 2 Liter Flavor Saver" and attached diagrams labeled Fig. 1 through Fig. 6 is the property of Dennis Riordan.

(Docket No. 39-5).

[6]

The Court notes that the drawings submitted to Heinz by Plaintiff, labeled Figure 1 through

letter regarding a potential new bottle, but ultimately rejecting his idea after reviewing the concept

with the appropriate department.[7]  (Docket No. 37 at ¶ 8).

Plaintiff claims that he introduced an idea for a "new bottling concept" to Defendant in his

1999 correspondence.  (Docket No. 37 at ¶ 12).  Plaintiff's submission of his idea to Defendant was

financially motivated.  (*Id*. at ¶ 16).  With respect to the specifics of the idea which he submitted,

he avers that it was a "new bottle which can stand up-side down by the novel idea of creating a base

by extending the walls of the container beyond it's [sic] capped closure and standing on the

circumferential edge of that extension."  (*Id*.).  He complains that Defendant "knowingly and

---

Figure 6, are identical to the drawings in Patent Number 6,105,812, dated Aug. 22, 2000, except that they lack the reference numbers contained in the patent itself.  (Compare Docket No. 39-2 at 2-6 with Docket No. 39-5 at 4-8).

[7]      The June 16, 1999 letter provides that:

> Dear Mr. Riordan:
>
> Thank you for your letter regarding a new bottle for Heinz ketchup and mustard.
>
> After reviewing your idea with the appropriate department, H.J. Heinz Company ("Heinz") has determined that it has no present interest in this concept.
>
> Heinz would like to thank you for your interest in and consideration of Heinz.
>
> Thank you again for writing to us.
>
> Very truly yours,
>
> s/ Max F. Miller

(Docket No. 39-6).

unlawfully deceived [him] by not informing him of [the] company's intent to expand on [his] idea by simply making the base detachable." (*Id*.).  He further maintains that his idea was "the impetus in the development of dispensing ketchup and other condiments in an 'up-side' down manner." (*Id*.).

Plaintiff alleges that Defendant permitted its employees to review and examine his idea, including his drawings and description, which enabled Defendant to adapt or alter his idea and ultimately develop its up-side down condiment dispenser.  (Docket No. 37 at ¶ 15).  He contends that these alterations were made by Defendant "in an attempt to conceal" its misappropriation of his idea. (*Id.* at ¶ 15).  Moreover, Plaintiff complains that the Defendant's misappropriation or theft of his idea occurred three years after he submitted his "novel idea, drawings included, to Defendant," i.e., in 2002.  (*Id.* at ¶¶ 12, 16).

After his 1999 submissions to Defendant, on August 22, 2000, the United States Patent and Trademark Office issued Plaintiff Patent Number 6,105,812, for his "Dual Chamber Container." (Docket No. 37 at ¶ 9; Docket No. 39-3).  Plaintiff avers that Defendant officially introduced its "up-side down bottle" via a press release in August of 2002.  (Docket No. 37 at ¶ 10).  He further alleges that in 2005 or 2006, Defendant altered their bottling terminology from "up-side down" to "top-down" bottle.  (*Id*.).  In January of 2006, Plaintiff contacted Defendant's legal department to request copies of their previous correspondence.  (Docket No. 37 at ¶ 11).  Plaintiff alleges that Defendant informed him that he had been "red-flagged" in their system and an attorney for Defendant asked Plaintiff if he was going to sue for any reason. (*Id*.).

Based on the above allegations, Plaintiff asserts claims of misappropriation of ideas and copyright infringement against Heinz.  (Docket No. 37).  With respect to his claim of copyright infringement, Plaintiff avers that he sought a valid copyright registration for his "bottle design

drawings," "artwork" and associated text on September 2, 2009, prior to the filing of his Second Amended Complaint. (Docket No. 37 at ¶ 18).  In support of this claim, Plaintiff has attached a "Form CO - Application for Copyright Registration" dated September 1, 2009 to his Second Amended Complaint, which he claims was mailed to the United States Copyright Office.  (Docket No. 37 at ¶ 19; Docket No. 37-3).  He states that because of his ignorance of the law, he believed that his patent protected the subject matter of the materials to which he now seeks copyright protection. (Docket No. 37 at ¶ 20).

Finally, Plaintiff seeks the following relief: (1) a declaratory judgment stating that Defendant violated Plaintiff's rights, including causing Plaintiff psychological trauma by misappropriating his idea and by infringing Plaintiff's copyright privileges; (2) an injunction ordering Defendant to cease and desist all bottling production "until a favorable resolution can be satisfactorily substantiated by all parties of concern"; and (3) compensatory and punitive damages in the amount of $57,000,000, plus royalties.  (Docket No. 37 at 5).

## III.    PROCEDURAL HISTORY

Plaintiff initially commenced this action by filing his Complaint *pro se* in the United States District Court for the Southern District of New York. (Docket No. 4). Thereafter, on August 11, 2008, that Court entered an order transferring the case to the United States District Court for the Western District of Pennsylvania. ( *Id*.). On August 22, 2008, Plaintiff moved for Leave to Proceed *in forma pauperis* (Docket No. 5), which this Court denied. (Docket No. 6). After paying the proper filing fee on August 25, 2008, Plaintiff filed his Complaint with this Court. (Docket No. 8).

On October 20, 2008, Defendant filed a Motion to Dismiss Pursuant to Rules 12(b)(6), 12(e),

and, in the alternative, Rule 12(d) and 56. (Docket No. 11). Plaintiff filed his response on December 23, 2008. (Docket No. 18). Then, on December 30, 2008, upon consideration of the parties' submissions, this Court ordered Plaintiff to file an Amended Complaint. (Docket No. 22).

Pursuant to this Order, Plaintiff filed his Amended Complaint on February 17, 2009. (Docket No. 25). Defendant again moved to dismiss Plaintiff's claims. (Docket No. 26). The Court liberally construed Plaintiff's Amended Complaint as potentially asserting claims of misappropriation of ideas, misappropriation of trade secrets, trademark infringement and copyright infringement. (Docket No. 35 at 6). Further, the Court recognized that Plaintiff had voluntarily withdrawn any claim of patent infringement in his pleadings. (*Id*.). After considering the parties' submissions, the Court granted Defendant's motion and ordered that: Plaintiffs' misappropriation of trade secrets and trademark infringement claims were dismissed, with prejudice; Plaintiffs' misappropriation of ideas and copyright infringement claims were dismissed, without prejudice; and Plaintiff was granted leave to amend his misappropriation of ideas and copyright infringement claims. (Docket No. 35 at 19). Specifically, the Court granted Plaintiff leave to amend his misappropriation of ideas claim in order to describe succinctly his "idea" that was allegedly misappropriated and to amend his copyright infringement claim "to the extent that he can allege that he owns a registered copyright in any of the subject matter at issue." (*Id*.).

As directed, Plaintiff filed his Second Amended Complaint on September 14, 2009. (Docket No. 37). Defendant then filed its third Motion to Dismiss and Brief in Support on September 28, 2009. (Docket Nos. 38, 39). Plaintiff filed two pleadings in response, the first styled as a "Sur-Reply" and the second as a "Brief in Support," on October 28, 2009 and October 30, 2009, respectively. (Docket Nos. 41, 42). Finally, Defendant filed its Reply Brief on November 11, 2009.

All briefing has concluded and the motion is now ripe for disposition.

## IV.   LEGAL STANDARD

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2008)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 129 S.Ct. at 1953; *Fowler*, 2009 U.S.App. LEXIS 18626, at *15. The Court further explained that although a district court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Iqbal*, 129 S.Ct. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555); see also *Fowler*, 578 F.3d at 210; and *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir.2008). The determination of whether a complaint contains a plausible claim for relief under the facts asserted "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556); *Fowler*, 578 F.3d at 211. In light of *Iqbal*, the United States Court of Appeals for the Third Circuit has instructed that district courts should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts alleged in the complaint are sufficient to

11

show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 210-11. Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

Additionally, because Plaintiff is proceeding *pro se*, his allegations are to be liberally construed as he is held to a less stringent standard than attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *see also Washam v. Stesis*, 321 Fed.Appx. 104, 105 (3d Cir. 2009)(not precedential).

In evaluating a Rule 12(b)(6) motion, a court "may look beyond the complaint to matters of public record, including court files and records ... and documents referenced in the complaint or essential to a plaintiff's claim which are attached to either the [c]omplaint or the defendant's motion." *Spence v. Brownsville Area Sch. Dist.*, Civ. A. No. 08-0626, 2008 U.S. Dist. LEXIS 55026, at *7 (W.D.Pa. July 15, 2008) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Miller v. Clinton County,* 544 F.3d 542, 550 (3d Cir. 2008) (quoting *Pension Benefit Guar. Corp.,* 998 F.2d at 1196.). Otherwise, a plaintiff with a legally insufficient claim could survive a motion to dismiss "simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp.,* 998 F.2d at 1196.

## V.    DISCUSSION

The Court first turns to the alleged waiver, a threshold issue, and will then address the sufficiency of Plaintiff's allegations set forth in his misappropriation of ideas and copyright

infringement claims.

     A.    *Effectiveness of the Waiver in the Request for Consideration of Idea Form*

     In his Second Amended Complaint, as well as several other pleadings in this case, Plaintiff admits that he signed the "Request for Consideration of Idea" form in conjunction with his submissions to Heinz in 1999. (Docket No. 37 at ¶ 6).  Pursuant to its terms, Plaintiff agreed, in pertinent part, that: (1) his idea submission was not solicited by Defendant; (2) no confidential relationship between Plaintiff and Defendant was created by his submission; (3) no compensation for the idea was promised by Defendant and that any agreement regarding compensation would be set forth in a separate written agreement; and (4) he "waived and relinquished" any rights in his ideas, except those covered by a "valid patent, trademark or copyright."  (Docket No. 39-5). Defendant argues that the language of the "Request for Consideration of Idea" form is legally binding and operates as a waiver of Plaintiff's misappropriation of ideas claim.  (Docket No. 39 at 6). Plaintiff contends that the form is not a contractual agreement and, further maintains that he was not made fully aware of the form's intent and that "there was not a knowing, voluntary and intelligent waiver." (Docket No. 41 at 1-2).

     This Court has previously applied Pennsylvania choice of law rules, and concluded that Pennsylvania law governs Plaintiff's misappropriation of ideas claim.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498 (1941); *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir.2007). With respect to the Defendant's waiver defense, there are no substantive differences in the laws of Pennsylvania and New York[8] regarding general principles of contractual waivers or

---

[8]               It is well established in New York that a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily

release agreements.  Accordingly, as there is no conflict between the laws of the two jurisdictions, the Court will apply Pennsylvania law to this dispute.  *See Hammersmith*, 480 F.3d at 230 ("If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary.").

Releases of liability, such as that contained in paragraph 4 of the "Request for Consideration of Idea" agreement, "are not favored" under Pennsylvania law.  *Beck-Hummel v. Ski Shawnee, Inc.*, 902 A.2d 1266, 1269 (Pa.Super. 2006)(citing *Zimmer v. Mitchell and Ness*, 385 A.2d 437, 439 (Pa.Super. 1978), *aff'd*, 416 A.2d 1010 (Pa. 1980)).   However, a release agreement may be enforceable if: (1) it does "not contravene any policy of the law"; (2) it involves a "contract between individuals relating to their private affairs"; (3) each party is a "free bargaining agent"; and (4) the agreement "spell[s] out the intent of the parties with the utmost particularity."  *Id*. (citing *Kotovsky v. Ski Liberty Operating Corp.*, 603 A.2d 663, 665 (Pa. Super. 1992)).  In addition, the release must be strictly construed and "against the party asserting it."  *Id*. (citing *Kotovsky*, 603 A.2d at 665).

---

entered into will be enforced as a private agreement between parties. Thus, a release will be binding on the parties absent a showing of fraud, duress, undue influence, or some other valid legal defense.

*Skylon Corp. v. Guilford Mills, Inc.*, 864 F.Supp. 353, 358 (S.D.N.Y. 1994)(quoting *DuFort v. Aetna Life Ins. Co.,* 818 F.Supp. 578 (S.D.N.Y.1993) (internal quotations and citations omitted); *see also Hummel v. AstraZeneca LP*, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008)(quoting *Skluth v. United Merch. & Mfr., Inc.*, 163 A.D.2d 104, 559 N.Y.S.2d 280, 282 (N.Y. App. Div. 1st Dep't 1990) and citing *Laramee v. Jewish Guild for the Blind*, 72 F. Supp. 2d 357, 359 (S.D.N.Y. 1999))("Courts applying New York law will enforce valid releases that are clear and unambiguous on their face and which were knowingly and voluntarily entered into and were not 'the product of fraud, duress, or undue influence.'").

The Court notes that if New York law was applied, the contractual waiver/release in the Request for Consideration of Idea form would still be enforced.

14

In this Court's estimation, all of the above requirements have been established in this case, and the "Request for Consideration of Idea" form is a binding agreement, which will be enforced.

The agreement does not contravene any public policy as there are no statutes or regulations barring parties from limiting their rights to those arising under the patent, copyright or trademark laws of the United States in an agreement involving an unsolicited idea submission by an inventor to a company.  In fact, several district courts have held that similar waivers were effective to bar common law claims.[9] Moreover, an unsolicited submission of an idea by an individual inventor to

---

[9]

    *See, e.g., Victor G. Reiling Assoc. and Design Innovation, Inc. v. Fisher-Price*, 406 F.Supp.2d 175, 182-86 (D.Conn. 2005)(applying New York law and upholding a contractual waiver provision which stated that "[y]ou must understand and agree that in return for receiving and examining your disclosure, we are released from any liability in connection with the receipt and examination of your disclosure, except as to such liability that may accrue under any valid patents or copyrights that you now or hereafter own or control."); *Taylor v. DaimlerChrysler AG*, 237 F.Supp.2d 789 (E.D. Mich. 2002)(applying Michigan law and upholding a contractual waiver provision which stated that "I do not hereby give Chrysler Corporation any rights under any patents, trademarks or copyrights I now have or may later obtain covering my suggestion, but I do hereby in consideration of the examination of my suggestion release it from any liability in connection with my suggestion or liability because of use of any portion thereof except such liability as may arise under valid patents, trademarks or copyrights now or hereafter issued or obtained...."); *Hassell v. Chrysler Corp.*, 982 F.Supp. 515, 528 (S.D.Ohio 1997)(upholding a contractual waiver which stated that "I do not hereby give Chrysler Corporation any rights under any patents ... I may now have or later obtain covering my suggestion, but I do hereby in consideration of the examination of my suggestion release it from any liability in connection with my suggestion or liability because of use of any portion thereof except such liability as may arise under valid patents, trademarks, or copyrights now or hereafter issued or obtained."); *M.H. Segan Ltd. P'ship v. Hasbro, Inc.*, 924 F. Supp. 512, 526 (S.D.N.Y. 1996), *abrogated on other grounds by Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000)(applying New York law and upholding a waiver which provided that "[a]ll of inventor's rights and remedies arising out of Inventor's Submission(s) to Hasbro shall be limited to any rights and remedies Inventor is accorded under United States Patent and Copyright Laws.  All other claims of whatever nature arising out of Inventor's submission to Hasbro are hereby waived."); *Kearns v. Ford Motor Co.*, 203 U.S.P.Q. 884, 886 (E.D.Mich.1978)(applying Michigan law and upholding a waiver which provided that "[a]ll rights and remedies of the undersigned (and principals, if any, of the undersigned) arising out of the disclosure of such suggestions to, or the use thereof by the Ford Motor Company or any of its representatives, shall be  limited to any rights and remedies, as may now or in the future be accorded

a company pursuant to the type of agreement involved in this case does not constitute an

unconscionable contract of adhesion,[10] which generally arises in the context of a consumer

purchasing goods or services from a company.  *See Victor G. Reiling Assoc.*, 406 F.Supp.2d at 185

("Plaintiffs' argument that the [agreement] was a contract of adhesion and therefore unenforceable

because it was not fairly negotiated and/or because [the inventor] did not understand its terms also

fails as a matter of law.").  With respect to Plaintiff's contention that the waiver was not knowing and

voluntary because he believed "[t]here would eventually be some sort of compensation forthcoming

for the use of any and all 'ideas,'" his allegations and correspondence with Defendant demonstrate

otherwise.  Indeed, he presently avers that he executed the "Request for Consideration" form and

---

to the undersigned under United States Patents or Copyrights ... All other claims of any nature
whatever arising out of any disclosure of the undersigned to Ford Motor Company are hereby
waived."); *but see Burten v. Milton Bradley Co.*, 763 F.2d 461, 462-68 (1st Cir. 1985)(applying
Massachusetts law and refusing to enforce a waiver to bar a claim for misappropriation of trade
secrets because the language of the agreement did not explicitly waive a confidential relationship
between the parties but stated only that "I understand that this submission by me and its acceptance
by Company does not, in whole or in part, establish or create by implication or otherwise any
relationship between Company and me ...").

[10]

Under Pennsylvania law,

> [g]enerally, an adhesion contract is a standardized contract form
> offered to consumers of goods and services on an essentially take it
> or leave it basis without affording the consumer a realistic
> opportunity to bargain and under such conditions that the consumer
> cannot obtain the desired product or services except by acquiescing
> to the form contract. The fundamental nature of this type of contract
> is such that the consumer who is presented with it has no choice but
> to either accept the terms of the document as they are written or reject
> the transaction entirely.

*Todd Heller, Inc. v. United Parcel Service, Inc.*, 754 A.2d 689, 700 (Pa.Super. 2000)(internal
citations and quotations omitted).

submitted it, along with his drawings, etc., to Defendant "in an attempt to be compensated from the defendant for the introduction of the idea," (Docket No. 37 at ¶ 15), that he was on a "quest to find suitable financial backing and/or compensation for release of the idea to the bottle concept" (Docket No. 41 at 1), and the form itself explicitly states that "I acknowledge and agree that HEINZ has not and is not promising any compensation for my idea or the use of my idea, and that all agreements as to compensation, if any, shall be in writing" (Docket No. 39-5).

The "Request for Consideration of Idea" form also clearly involves a "contract between individuals relating to their private affairs" and both parties can be considered "free bargaining agents." *Beck-Hummel*, 902 A.2d at 1269.  Again, the substance of the agreement involves the unsolicited submission of an idea by a private individual to a corporation for its consideration to determine if a potential business relationship could be formed.  (Docket No. 39-5).  Moreover, although Defendant's initial correspondence directed Plaintiff to execute and return the attached "Request for Consideration of Idea" form, which he did without question, Plaintiff does not allege that he was prevented from negotiating the terms with Defendant.

Further, the "Request for Consideration of Idea" agreement, strictly construed against Defendant, its drafter, "spell[s] out the intent of the parties with [the] utmost particularity." *Beck-Hummel*, 902 A.2d at 1269.  The pertinent provision states that "I waive and relinquish any rights that I may have in connection with said idea, except those rights that a valid patent, trademark, or copyright may cover." (Docket No. 39-5 at ¶ 4).  This language is clear and unambiguous, explicitly providing that Plaintiff agreed to waive any rights that he possessed in the unsolicited ideas he presented to Defendant, except those covered by the patent, trademark, or copyright laws. *See American Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co.*, 62 F.3d 574, 581 (3d Cir.

1995)(ambiguity is a question of law for the court and "[t]o be unambiguous, an agreement must be reasonably capable of only one construction.").  No other construction is reasonable.

Therefore, given the express language of the waiver in the "Request for Consideration of Idea" agreement, which is enforceable, Plaintiff plainly waived any potential claims arising from his submissions to Defendant in 1999, except to the extent that his rights were covered by a valid patent, trademark or copyright.  *See Hassell*, 982 at 528 ("The Court concludes that the language contained in the Suggestion Agreement is susceptible of only one interpretation.  The plaintiffs may only bring claims against Chrysler resulting from patent, copyright or trademark infringement.").  Plaintiff's remaining claims[11] are only for misappropriation of ideas, a state common law claim, and copyright infringement.  Accordingly, Plaintiff waived his right to assert a claim for misappropriation of ideas and this claim must be dismissed.

B.   *Plaintiff's Claims Fail as a Matter of Law*

Although the Court has found that the waiver in the "Request for Consideration of Idea" form is enforceable, and that Plaintiff's misappropriation of ideas claim must be dismissed because it is precluded by the waiver, the Court will now address Plaintiff's allegations of his misappropriation of ideas and copyright infringement claims, which are also subject to dismissal for failure to state a claim upon which relief can be granted.

1.   Misappropriation of Ideas

Plaintiff was granted leave to amend his misappropriation of ideas claim in order to permit

---

[11]

As discussed in the Court's previous Memorandum Opinion, Plaintiff has expressly withdrawn any patent infringement claim against Defendant and this Court dismissed his trademark infringement and trade secrets claims, with prejudice.  (Docket No. 35 at 19).

him to clarify the idea which he alleges he submitted to Defendant.  (Docket No. 35 at 19).  He

alleges in his Second Amended Complaint that the idea he submitted is for a "new bottle which can

stand up-side down by the novel idea of creating a base by extending the walls of the container

beyond it's [sic] capped closure and standing on the circumferential edge of that extension." (Docket

No. 37 at ¶ 12).  He references the patent he owns for a "Dual Chamber Container" as well as the six

drawings he submitted to Defendant, which are virtually identical to the drawings in his patent.

(Docket No. 37).  Plaintiff maintains that Defendant permitted its employees to review and examine

his idea, including his drawings and descriptions.  (Docket No. 37 at ¶ 15).  He claims that this

review enabled Defendant to enhance, adapt or alter his idea "by simply making the base detachable"

and, ultimately, develop its up-side down condiment dispenser.  (Docket No. 37 at ¶ 15).  These

allegations are insufficient as a matter of law.

Under Pennsylvania law, the tort of misappropriation of ideas has two elements: (1) the

plaintiff had an idea that was novel and concrete, and (2) his idea was misappropriated by the

defendant. *Blackmon v. Iverson*, 324 F.Supp.2d 602, 607 (E.D.Pa.2003)(citing *Sorbee Int'l Ltd. v.*

*Chubb Custom Ins. Co.*, 735 A.2d. 712, 714 (Pa.Super. 1999).

For an idea to be legally protected, the idea must meet the threshold requirement of novelty.

*Blackmon*, 324 F.Supp.2d at 607. An idea is novel and merits protection when it is truly innovative,

inventive, and new. *Id*. An idea is not novel if it is merely a clever version or variation of already

existing ideas. *Id*. Novelty and concreteness are required so that the court can identify an idea as

having been created by one party and stolen by another. *Sorbee*, 735 A.2d. at 714.

At this stage, Plaintiff has sufficiently alleged a novel and concrete idea for a dual-chamber

container with extended walls that create bases around the capped enclosures on both ends of the

19

bottle, permitting the container to stand on either side.  However, Plaintiff has not sufficiently alleged that Defendant misappropriated this idea.

With respect to whether an idea has been misappropriated, Pennsylvania courts look to the three elements of common law misappropriation:

> (1) the plaintiff "has made substantial investment of time, effort, and money into creating the thing misappropriated such that the court can characterize the 'thing' as a kind of property right," (2) the defendant "has appropriated the 'thing' at little or no cost such that the court can characterize the defendant's actions as 'reaping where it has not sown,'" and (3) the defendant "has injured the plaintiff by the misappropriation."

*Sorbee*, 735 A.2d at 716 (quoting *LeBas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group*, 50 Cal.App.4th 548, 59 Cal.Rptr.2d 36 (Ca.App.1996)).[12]  The first requirement is met, as the Court can reasonably infer from the allegations in the Second Amended Complaint that Plaintiff invested time and money in the creation of his idea, including by obtaining a patent for his dual chamber container. However, Plaintiff has not sufficiently alleged the remaining elements.  Plaintiff has not alleged that Defendant produced a "dual chamber container" or even a single chamber bottle "which can stand up-side down" on a base which extends from the "walls of the container beyond it's capped closure."  (*See* Docket No. 37).  Instead, he maintains that Defendant improved his idea for a dual

---

12

A plaintiff may also be required to establish that there is competition between the plaintiff and the defendant.   *Sorbee*, 735 A.2d at 716 (quoting *Atlantic Mutual Ins. Co. v. Badger Medical Supply Co.*, 191 Wis.2d 229, 528 N.W.2d 486 (Wis.1999) ("[The] essence of [a] cause of action of misappropriation is the defendant's use of the plaintiff's product, into which plaintiff has put time, skill and money; and the defendant's use of the plaintiff's product or a copy of it in competition with the plaintiff and gaining an advantage in that competition because the plaintiff, and not the defendant, has expended the energy to produce it.")); *see also Blackmon*, 324 F.Supp.2d at 607. However, as was recognized in the previous Memorandum Opinion, the Court need not reach the issue because Plaintiff's claims are deficient for other reasons.

chamber container "by making the base detachable,"creating its up-side down or TOPDOWN®

bottle within which its condiment products are now sold.   (Docket No. 37 at ¶ 10).  He also

voluntarily submitted his ideas to Defendant, subject to the terms of the "Request for Consideration

of Ideas" form, agreeing that "the use or non-use that HEINZ may make of any ideas submitted by

[Plaintiff] shall be at the exclusive discretion of HEINZ."   (Docket No. 39-5).  Therefore, he has not

established that Defendant "appropriated" his idea.

Plaintiff has also failed to allege that he was injured by the alleged misappropriation, as he

maintains only that he was not paid for his idea.

> In order to state a claim for idea misappropriation, it must be the
> taking of the idea itself that causes the plaintiff a competitive or other
> financial harm.  This occurs only when the defendant's use of the idea
> deprives the plaintiff of some competitive or financial benefit or
> causes some other detriment separate from the misappropriation.

*Blackmon*, 324 F.Supp.2d at 610.  Merely alleging that one was not paid for an idea which was

voluntarily submitted to another is insufficient.  *Id*.[13]

---

[13]

Given the Court's rulings that Plaintiff's misappropriation of ideas claim must be dismissed
based on the waiver and for failure to state a claim upon which relief can be granted, the Court need
not address Defendant's alternative argument that this claim is barred by the statute of limitations.
However, the Court notes that Plaintiff alleges that his idea was misappropriated three years after
his submissions, i.e., in 2002 and his initial complaint in this action was not filed until six years later,
in August of 2008.  This filing is clearly outside the applicable two-year statute of limitations for tort
claims under Pennsylvania law.  *See* 42 Pa.C.S. § 5524(7)("The following actions and proceedings
must be commenced within two years: ... (7) Any other action or proceeding to recover damages for
injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct
..."); *see also Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir.2002) ("If the bar is not apparent
on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under
Rule 12(b)(6).").

In addition, to the extent that Plaintiff maintains that the statute of limitations should be
tolled based on the discovery rule, his arguments lack credibility and do not demonstrate that he
acted with reasonable diligence in preserving his claim.  The discovery rule precludes the application

For the above reasons, Defendant's motion to dismiss Plaintiff's misappropriation of ideas claim is granted, and said claim is dismissed, with prejudice.[14]

    2.    <u>Copyright Infringement</u>

The Court also granted Plaintiff leave to amend his claim of copyright infringement against Defendant, "to the extent that he can allege he owns a registered copyright in any of the subject matter at issue." (Docket No. 35 at 19).  In his Second Amended Complaint, Plaintiff alleges that he has submitted an application to register a copyright "relating to subject matter originating in 1998 of plaintiff's 'bottle design drawings' as described 'art-work' within the initial complaint, as well as the first amended complaint." (Docket No. 37).  Upon consideration of the allegations of his Second Amended Complaint, and the attachments thereto, Plaintiff has failed to properly allege either registration or ownership of a copyright, and his copyright infringement claim must be dismissed.

---

of the statute of limitations to bar a claim when an injury is not discovered due to "a plaintiff's complete inability, due to facts and circumstances not within his control, to discover an injury despite the exercise of due diligence." *Kingston Coal Co. v. Felton Min. Co., Inc.*, 690 A.2d 284, 288 (Pa.Super 1997). The inquiry as to reasonable diligence is generally left for a jury except "where the facts are so clear that reasonable minds cannot differ as to whether the plaintiff should reasonably be aware that he has suffered an injury, the determination as to when the limitations period commences may be made as a matter of law." *Kingston Coal*, 690 A.2d at 288.  Plaintiff complains that his idea for an up-side down bottle was misappropriated by Defendant's production and national distribution of its ketchup products in up-side down bottles in 2002. (Docket No. 37 at ¶¶ 12, 16). He alleges that Defendant changed its bottling terminology from up-side down to top-down in 2005-2006. (*Id*. at ¶ 10). He then contacted Defendant's legal department in January of 2006 in an attempt to recover his earlier submissions. (*Id*. at ¶ 11). Despite the national distribution of Defendant's products in up-side down bottles in 2002, Plaintiff's awareness of the change in terminology describing Defendant's bottle in 2005-2006, and his contacting Defendant in January of 2006, Plaintiff contends that he did not learn of the misappropriation until 2007, when he allegedly began investigating press releases. (Docket Nos. 41, 42).  In this Court's estimation, Plaintiff's tolling argument contradicts the allegations in his complaint and is weak, at best.

[14]
    As set forth in section V(C) *infra*, any further amendment of this claim would be futile.

Initiation of a civil suit for copyright infringement requires either preregistration or registration of the work in question in accordance with the United States Copyright Act prior to initiating the suit. 17 U.S.C. § 411(a).[15]  This Court has previously recognized that there is a split amongst the Courts of Appeals as to whether a suit can be maintained while an application for copyright registration remains pending, as it is in this case.  *See Tegg Corp. v. Beckstrom Elec. Co.*, Civ. A. No. 08-435, 2008 WL 2682602, at *5-6 (W.D.Pa. July 1, 2008).  The United States Court of Appeals for the Third Circuit has not addressed this issue.  One line of cases, relying on *Apple Barrel Prod., Inc. v. Beard*, 730 F.2d 384, 386-87 (5th Cir.1984), permits the commencement of a copyright infringement action in district court upon the Copyright Office's receipt of the copyright registration application, copies of the works sought to be copyrighted and the payment of a filing fee. *See Tang v. Hwang*, 799 F.Supp. 499, 502-03 (E.D.Pa. 1992); *R & B, Inc. v. Needa Parts Mfg.*, Civ. A. No. 01-1234, 2001 U.S. Dist. LEXIS 17406, 2001 WL 1251211 (E.D.Pa. Aug. 13, 2001); *Bieg v. Hovnanian Enters., Inc.*, Civ. A. No. 98-5528, 1999 U.S. Dist. LEXIS 17387, 1999 WL 1018578 (E.D.Pa. Nov.8, 1999). A second line of cases requires a plaintiff to plead that he has actually registered the works in question with the Copyright Office prior to commencement of the copyright

---

[15]

Section 411(a) provides:

> no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

17 U.S.C. § 411(a).

infringement action. *See La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1200, 1208 (10th Cir.2005)("A suit for copyright infringement cannot be brought unless and until the copyright is registered."); *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1285 (11th Cir.2000); *In re Literary Works in Electronic Databases Copyright Litigation*, 509 F.3d 116 (2d Cir.2007), *cert. granted Reed Elsevier, Inc. v. Muchnick, --- U.S. ----*, 129 S.Ct. 1523, 173 L.Ed.2d 655 (2009); *Wellness Pub v. Barefoot*, Civ. A. No. 02-3773, 2008 WL 108889 at * 8 (D.N.J. Jan. 8, 2009). In this Court's estimation, the more persuasive view is that set forth in the second line of cases, which adhere to the plain language of 17 U.S.C. § 411(a), and preclude a plaintiff from bringing a copyright infringement claim while a registration is pending. Plaintiff alleges in his Second Amended Complaint only that he has submitted an application for copyright registration and affixes proof of the filing of the application and, therefore, has failed to meet the jurisdictional prerequisites for bringing a copyright infringement claim in this Court. Accordingly, Plaintiff's copyright infringement claim must be dismissed as this Court lacks subject matter jurisdiction over his claim.

In addition, even if the registration requirement had been met, Plaintiff's allegations fail to properly set forth the essential elements of a copyright infringement claim. To establish a claim of federal copyright infringement, a plaintiff must establish "(1) ownership of a valid copyright; and (2) unauthorized copies of original elements of the Plaintiff's work." *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir.2002). Ownership of a valid copyright requires the following: "(1) originality in the author; (2) copyrightability of the subject matter; (3) a national point of attachment of the work, such as to permit a claim of copyright; (4) compliance with applicable statutory formalities; and (5) (if the owner is not the author) a transfer of rights or

other relationship between the owner and the author." 13 MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHTS, § 13.01[A] (2007).

Plaintiff's allegations in his Second Amended Complaint that he submitted copyrightable subject matter to Defendant are improper legal conclusions which are not credited at the motion to dismiss stage. *See Fowler*, 578 F.3d at 210-11. Further, Plaintiff's "idea" for an up-side down bottle is not copyrightable subject matter. *See* 17 U.S.C. § 102(b)("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of form in which is described, explained, illustrated, or embodied in such work."); 17 U.S.C. § 102(a)(Copyright law only protects a work of authorship "fixed in a tangible medium of expression."). Moreover, to the extent that the text, drawings or other elements contained in the '812 patent contain copyrightable subject matter, Plaintiff has failed to specifically allege same in his Second Amended Complaint. He has also failed to allege that Defendant copied any of these materials. Accordingly, Plaintiff has failed to state a claim for relief for copyright infringement that is plausible on its face.

Based on the foregoing, Plaintiff's copyright infringement claim must be dismissed.[16]

C.    *Leave to Amend Complaint*

The United States Court of Appeals for the Third Circuit has held that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245. Further, "even when [a] plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the

_____

[16]

As set forth in section V(C) *infra*, Plaintiff will not be granted leave to amend this claim.

district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time." *Id*.

Plaintiff will not be granted leave to amend his complaint a third time as any further amendment would be futile.  Plaintiff expressly waived any claims against Defendant which were not covered by a valid patent, trademark or copyright in 1999, including his claim for misappropriation of ideas.  Moreover, even without these deficiencies, Plaintiff has failed to set forth sufficient facts to demonstrate a plausible claim to relief for misappropriation of ideas as he has not alleged that Defendant misappropriated his "idea" nor that he was injured by said misappropriation as required by Pennsylvania law.  Further amendment cannot cure these deficiencies.  Accordingly, Plaintiff's misappropriation of ideas claims must be dismissed, with prejudice.

In addition, this Court lacks subject matter jurisdiction over Plaintiff's copyright infringement claim because he has not met the statutory prerequisites for filing suit.  Given Plaintiff's allegations that he has only applied for a copyright of certain subject matter, further amendment cannot cure this defect.  Accordingly, as Plaintiff's copyright infringement claim is premature, it must be dismissed, without prejudice.

## VI.   CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss [38] is GRANTED.  Plaintiff's misappropriation of ideas claim is dismissed, with prejudice, and his claim for copyright infringement is dismissed, without prejudice.  However, as all of Plaintiff's claims have been dismissed from this action, the Clerk of Court is directed to mark this case CLOSED.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: December 8, 2009

cc/ecf: All counsel of record
cc:       Dennis Riordan
          9 DeForest Avenue
          New York City, NY 10956
          (Regular and certified mail)